J^DECUIR, Judge.
Three year old B.R. attended Little Britches Day Care Center in Rayne from June 1996 to January 31, 1997. While bathing B.R. one evening in January 1997, his father noticed some redness around B.R.’s anus and asked what had happened. B.R. indicated that two of his three year old classmates, J.M. and D.P., tried to stick a branch up his bottom and inserted their penises into his mouth. According to B.R. all of these acts occurred in the bathroom at Little Britches, while the other children were outside playing. B.R.’s mother questioned B.R. numerous times about the incident. She also filed a lack of supervision complaint against Little Britches. The Office of Community Services questioned B.R. in the mother’s presence. Dr. St. Clergy, the physician who examined B.R., was unable to make a definitive determination as to the cause of the redness around B.R.’s anus, but noted no tearing, bleeding or other internal damage.
B.R.’s mother then took B.R. to a psychologist. When that psychologist failed to establish a relationship with B.R. satisfactory to the mother, B.R. was taken to Dr. Lyle LeCorgne, a clinical psychologist. At the first visit, the mother recounted the story of the alleged incident for Dr. LeC-orgne and the toddler merely affirmed what his mother said. B.R. has continued seeing Dr. LeCorgne on a biweekly basis, with the exception of six weeks when the mother felt that accumulating a down payment for a new home was a more immediate necessity than B.R.’s counseling.
J.M. and D.P. denied the incident when questioned by their parents. Little Britches also contested the validity of the story, noting that one of the toddlers regularly left school before the playtime in question. Moreover, Little Britches’ policy did not permit three children in the restroom at a time and required that an attendant always accompany children and wait by the partially opened door. Finally, LLittle Britches employees asserted that the door into the building where the restroom was located was extraordinarily heavy and could not be opened by the toddlers without adult assistance.
Ultimately, B.R.’s parents filed a petition for damages naming as defendants, Little Britches and its insurer, State Farm, as well as the parents of J.M. and D.P. and their respective insurers, Farm Bureau and New Hampshire Insurance Company. The claim against D.P.’s par *93 ents and New Hampshire was later dismissed.
After four days of trial, the jury returned a verdict finding that B.R. had been struck or improperly touched but had suffered no compensable injury as a result. B.R.’s parents appeal the jury’s verdict, contending it manifestly erred when it failed to award damages.
STANDARD OF REVIEW
We note at the outset that this case involves three year old children, whose words, actions, memories, and descriptions of events cannot be correlated to those of an adult. As stated in W. Page Keeton, et al., Prosser and Keeton on the Law of Torts, § 82, at 179 (5 th ed.1984), on the question of a child’s legal capacity, “It is feasible and appropriate to apply a special standard to [children], because their normal condition is one of incapacity and the state of their progress toward maturity is reasonably capable of determination, and because there is sufficient basis of community experience, on the part of those who have been children or dealt with them, to permit the jury to apply a special standard.” Likewise, the laws of evidence recognize that children may not have a clear understanding of what has happened to them. Folse v. Folse, 98-1796 (La.6/29/99); 738 So.2d 1040. Thus, the jury is called upon to evaluate the evidence in light of the child’s level of understanding and normal incapacity.
A jury’s findings of fact may not be reversed absent manifest error or unless clearly wrong. Stobart v. State, through DOTD, 617 So.2d 880 (La.1993). The [¿“reviewing court must do more than simply review the record for some evidence which supports or controverts the [jury’s] findings”; it must instead review the record in its entirety to determine whether the jury’s finding was clearly wrong or manifestly erroneous. Id. at 882. The issue to be resolved by a reviewing court is not whether the trier of fact was •right or wrong, but whether the factfin-der’s conclusion was a reasonable one. Id. The reviewing court must always keep in mind that “if the trial court's or jury’s findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently.” Id. at 882-83 (citing Housley v. Cerise, 579 So.2d 973 (La.1991)) (quoting Sistler v. Liberty Mutual Ins. Co., 558 So.2d 1106, 1112 (La.1990)).
Was B.R. struck or improperly touched?
The jury found B.R. was “struck or improperly touched” while attending Little Britches. However, the jury also found B.R. suffered no injury as a result of the “striking or improper touching.” Plaintiffs contend the jury’s findings are inconsistent. Defendants disagree and state the jury’s findings “do not lead to the inescapable conclusion that the jury found that physical or sexual abuse had occurred.” Defendants suggest that the jury interrogatories were posed in an “alternative fashion” and asked the jury to determine if B.R. was struck or improperly touched. They conclude the jury must have found B.R. was “struck” while'at Little Britches, but he was not “improperly touched,” i.e., sexually or physically abused.
The jury heard testimony from Little Britches employees as well as B.R.’s mother that B.R. sometimes came home bruised and had bruises at the time of these allegations. Neither the workers nor B.R.’s mother found this out of the ordinary for toddlers playing together. Little Britches employees also testified that B.R. was somewhat of a “tattle tale” and seldom missed an opportunity to report even minor Rencounters. Oddly, B.R. never reported anything about this alleged incident to his teachers.
Dr. Lyle LeCorgne, qualified at trial as an expert in clinical psychology, began treating B.R. shortly after his parents were informed of the incident. He testi- *94 fled B.R. was initially uncooperative. But, B.R. eventually told him J.M. and D.P. put their “birdies” in his mouth and attempted to insert objects into his anus. Dr. LeC-orgne noted B.R. exhibited “classic” signs of having been sexually abused, including bed-wetting, calling for his mother in his sleep, using foul language and focusing on genitalia in his drawings of animals and people. Dr. LeCorgne focused in particular on B.R.’s subsequent attempts to sexually touch a cousin. He testified this incident represented a “passing of the torch” and was a very strong indicator that the sexual acts B.R. described actually occurred. Just prior to trial, Dr. LeCorgne was informed J.M. had related he too was sexually violated by an older boy prior to engaging in such acts with B.R. Dr. LeC-orgne explained this case represented the “classic” instance where a child, who has been abused, loses some control of his body and tries to restore that control by repeating the same behavior on another.
Dr. Maureen Brennan, a clinical psychologist, reviewed Dr. LeCorgne’s records at Defendants’ behest. She testified two children pulling a third child into a bathroom with intent to perform certain acts involved advanced planning and was very unlikely to have occurred in this instance. She also testified that the line between fantasy and reality for three year olds is very shadowy. She indicated that it is not unusual for a three year old to adamantly assert that an event occurred even when it did not. She also indicated that three year olds are masters at recognizing what their parents want to hear and responding accordingly, especially when the response has been reinforced repeatedly. Finally, she indicated that three year olds are fascinated with their bodies and the bodies of others and will often engage in “you show me yours, I’ll show you mine” behavior.
LThe record also reveals that B.R. took baths with his mother, slept in the marital bed and may have observed intercourse between his parents. Both psychologists indicate that these circumstances, combined with the instability created by his parents’ on again-off again relationship, could also lead to the fixation on genitalia exhibited by B.R. in words and drawings as well as other such indicators noted in Dr. LeCorgne’s testimony.
The record amply supports the jury’s conclusion that B.R. was “struck or improperly touched” while under the care and supervision of Little Britches. We need not decide whether, as defendants argue, the jury found only that B.R. was struck. The jury could have concluded either that B.R. was “struck” in a friendly way by other kids while playing in the yard or classroom at the center, or was “improperly touched” while in the care and supervision of Little Britches.
Was B.R. injured as a result of the striking or improper touching?
Despite the jury’s conclusion that B.R. had been struck or improperly touched, they found B.R. was not injured as a result of the conduct.
There are several items of evidence in the record which support the jury’s conclusion. The first is the testimony of Dr. Brennan. When asked whether sexual touchings are automatically detrimental to children, Dr. Brennan testified if it is “handled appropriately by the parents, [it] will typically not cause any long term harm at all.” In her opinion, appropriate handling of the situation by parents includes remaining calm, not scolding the children or getting overly emotional about the situation. B.R.’s father admitted he was initially upset when his son told him what happened at Little Britches and in an angry voice asked B.R. to explain “why he let the other children touch his privates.” Dr. Brennan testified the father’s reaction to B.R.’s disclosure may not have been the best choice.
Dr. Brennan also testified children in the three to five year old age group are extremely interested in anatomical exploration, which she characterized as the “you *95 17show me yours and I’ll show you mine” stage. She further explained that at this stage of development, children will “play with themselves, and sometimes there will be some touching of others especially in that show me phase.”
The jury was also presented with evidence that J.M. had experienced another child putting J.M.’s penis in his mouth. J.M.’s parents informed J.M. of appropriate behavior and did not make a big deal of the issue with their toddler. There is no evidence that undue trauma was suffered by J.M. or that extensive treatment was necessary.
In sharp contrast, Dr. LeCorgne, who has a pecuniary interest in B.R.’s treatment, testified that although B.R. has progressed well, it is imperative that he receive future counseling. Dr. LeCorgne also believes it is likely B.R. will require future counseling at pivotal stages in his development such as puberty, first date, first sexual experience, engagement, marriage and the birth of his first child. Dr. LeCorgne also thought B.R. might require hospitalization in the future to treat the harm caused him.
Interestingly, in light of those conclusions, Dr. LeCorgne casually testified about an incident where B.R. stuck his finger up his cousin’s anus. There is no mention of trauma to this child. In fact, B.R.’s mother reprimanded B.R. and the parties apparently moved on.
Under the circumstances, we find the jury could have reasonably found that what occurred between these toddlers was normal and innocent child’s play. The fact that the adults involved found sinister motives on the part of children did not require the jury to do so. Faced with testimony regarding three similar events, the jury concluded that B.R. did not suffer any injury as a result of the incident at Little Britches. The jury’s finding is not manifestly erroneous.
1 «CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs of this appeal are taxed to plaintiffs-appellants.
AFFIRMED.
COOKS, J., dissents and assigns written reasons.